The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modification.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. On the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. On 9 April 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
4. A set of plaintiff's medical records marked as Stipulated Exhibit Number Two is admitted into evidence.
5. A one-page medical excuse note from Dr. Scott McCloskey marked as Stipulated Exhibit Number Three is admitted into evidence.
6. Plaintiff's treating physician shall be Dr. Mark Marchese.
7. Plaintiff shall engage in a work hardening program as recommended by Dr. Andrea Stutesman.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modification and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty years old. On 9 April 1998, defendant-employer employed plaintiff as the manager of its toy department. On that date, plaintiff earned $7.80 per hour. Plaintiff's average weekly wage is $308.00, which yields a compensation rate of $205.33.
2. In December 1997, plaintiff underwent low back surgery by neurosurgeon Dr. Mark Marchese for a condition unrelated to this claim. As a consequence of her low back condition, plaintiff was restricted from lifting greater than twenty pounds.
3. On 9 April 1998, plaintiff was performing her usual duties for defendant-employer. On that date, plaintiff was assigned to stock shelves with swimming pool chemicals. While lifting a container of pool chemicals, plaintiff experienced a pinching sensation in the back of her neck, near her shoulders. Shortly thereafter, plaintiff began experiencing pain and stiffness in her upper back and shoulders.
4. Plaintiff reported the lifting incident to defendant-employer. On 22 April 1998, plaintiff presented to Dr. Marchese for follow-up evaluation of her low back condition. During this visit, plaintiff reported experiencing neck and shoulder discomfort after lifting at work. Dr. Marchese continued the lifting restrictions that had been imposed following plaintiff's low back injury. Thereafter, plaintiff's symptoms persisted and on 4 June 1998 Dr. Marchese ordered a MRI of plaintiff's cervical spine. This diagnostic study failed to reveal any abnormality that would require surgical treatment. The study did reveal a slightly bulging disc at C5-C6. An EMG performed after the MRI confirmed that the bulging disc did not impinge upon the nerve root and did not cause radiculopathy. Dr. Marchese did not excuse plaintiff from work. Rather, he permitted her to continue working in the capacity she had been working following her low back surgery. On 30 July 1998 Dr. Marchese referred plaintiff to Dr. Andrea Stutesman, a specialist in physical medicine and rehabilitation for work hardening.
5. Plaintiff continued under the care of Dr. Marchese through May 1999. However, on 14 September 1998, plaintiff received a second opinion evaluation from Dr. Scott McCloskey, a neurosurgeon. Dr. McCloskey ordered a post-myelogram CT scan. Based upon this study and the MRI, Dr. McCloskey recommended cervical surgery.
6. Plaintiff's cervical condition does not require surgical treatment. Plaintiff will benefit from additional conservative treatment, specifically including the work hardening program prescribed by Dr. Stutesman.
7. Plaintiff returned to Dr. Marchese on 4 March 1999. On that date, Dr. Marchese continued to recommend conservative treatment. He also restricted plaintiff from lifting greater than 20 pounds and repetitive lifting or bending.
8. On 19 April 1999, Dr. McCloskey recommended that plaintiff undergo cervical fusion. Dr. McCloskey also excused plaintiff from work until defendants authorized the surgery he recommended. Dr. McCloskey was not plaintiff's treating physician and had been authorized to examine plaintiff only for the purpose of giving a second opinion regarding her treatment.
9. On 5 May 1999, plaintiff telephoned Dr. Marchese's office and requested a note retroactively excusing her from work from 16 April 1999 until her evaluation by Dr. Stutesman on 11 May 1999. Dr. Marchese signed a work excuse note consistent with plaintiff's request. Plaintiff presented to Dr. Stutesman on 11 May 1999. After examination and review of the diagnostic studies that had been performed, Dr. Stutesman released plaintiff to return to work four hours per day with a restriction against lifting greater than ten pounds.
10. Beginning 19 April 1999, plaintiff was excused from work. However, plaintiff thereafter accepted defendant-employer's offer of part-time employment, working four hours per day in the cash office. Plaintiff last worked in this light duty, part-time position on 4 June 1999. The duties of this part-time position were suitable to plaintiff's physical restrictions.
11. Plaintiff returned to work in this part-time position, earning wages that were $156.00 less per week than the wages she earned prior to her injury. Plaintiff continued to work in this position through 4 June 1999. Plaintiff did not return to work for defendant-employer after that date. Plaintiff was capable of continuing to work in this position when she voluntarily terminated her employment with defendant-employer.
12. At the time defendant-employer offered plaintiff the light duty, part-time position, plaintiff had not reached maximum medical improvement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 4 June 1999, plaintiff was capable of earning wages that were $156.00 per week less than the wages she was capable of earning on the date of her injury. Upon plaintiff's return to work in the light duty position, defendants were entitled to suspend payment of temporary total disability compensation and to initiate payment of temporary partial disability compensation based upon plaintiff's reduced earning capacity. N.C. Gen.Stat. § 97-30, § 97-32.1.
2. Plaintiff is entitled to payment of temporary partial disability compensation at the rate of $104.00 per week beginning 4 June 1999 and continuing for 300 weeks from the date of injury, less the number of weeks during which she received temporary total disability compensation, or until she returns to work earning greater wages or until further order of the Industrial Commission allowing cessation of temporary disability compensation. N.C. Gen. Stat. § 97-30.
3. Plaintiff is entitled to payment of all medical expenses incurred for treatment of her 9 April 1998 injury, including expenses incurred for evaluations performed by Dr. McCloskey and the work hardening program prescribed by Dr. Stutesman. N.C. Gen. Stat. § 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary partial disability compensation at the rate of $104.00 per week beginning 4 June 1999 and continuing for 300 weeks from the date of injury, less the number of weeks during which she received temporary total disability compensation, or until she returns to work earning greater wages or until further order of the Industrial Commission allowing cessation of temporary disability compensation. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3.
2. Defendants shall pay all medical expenses incurred by plaintiff for treatment of her 9 April 1998 injury, including expenses incurred for evaluations performed by Dr. McCloskey and the work hardening program prescribed by Dr. Stutesman.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted and paid directly to plaintiff's attorney. Thereafter, defendants shall pay plaintiff's attorney every fourth disability payment due plaintiff under paragraph 1.
4. Defendants shall pay the costs due to the Commission.
This the ___ day of August 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER